United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY ATIENZA,<br><br>   Plaintiff,<br><br>  v.<br><br>FCA US LLC,,<br><br>   Defendant. | Case No. 3:17-cv-00977-WHO<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 38 |

**INTRODUCTION**

In May 2013, plaintiff Jeffrey Atienza purchased a Dodge Charger manufactured by defendant FCA US LLC ("FCA") (Fiat Chrysler Automobiles). He now brings suit under California's Song–Beverly Consumer Warranty Act on the grounds that FCA failed to repair or replace the car, which was not merchantable at the time of purchase. Before me is FCA's motion for summary judgment, which I deny because there are genuine disputes over material facts.

**BACKGROUND**

When Atienza's car needed repair or maintenance work, he or his father[1] took it to Stewart Chrysler Dodge Jeep Ram in Serramonte ("Stewart Chrysler").[2] Deposition of Jeffrey Atienza ("Atienza Depo.") [Dkt. No. 38-2] 47:5–10. Stewart Chrysler created a record for each of those visits. Declaration of Stephen Grimsrud ("Grimsrud Decl.") Ex. 2 (certifying authenticity of business records) [Dkt. No. 38-3].

---

[1] For simplicity's sake, I will not differentiate between the occasions when Atienza's father brought the vehicle in and those when Atienza brought it in himself.

[2] Atienza also brought the car to Mobile 1 on 19th Avenue in San Francisco once and Agundis Tire Shop once. Atienza Depo. 47:8–14.

During the first visit on September 11, 2013 at 6,421 miles, the car underwent a lube, oil, and filter change, a tire rotation, and a multi-point vehicle inspection. Grimsrud Decl. Ex. 3 (first repair order) [Dkt. No. 38-4]. The following day, Atienza brought the car back, and the thermostat housing was replaced due to a coolant leak. Grimsrud Decl. Ex. 4 (second repair order) [Dkt. No. 38-5].

During the third visit on February 24, 2014 at 15,322 miles, the car underwent another lube, oil, and filter change, a tire rotation, and a multi-point vehicle inspection. Grimsrud Decl. Ex. 5 (third repair order) [Dkt. No. 38-6]. The water pump was replaced after a second coolant leak was found in that area. *Id.*

During the fourth visit on September 8, 2014 at 22,666 miles, the car underwent another lube, oil, and filter change, a tire rotation, and a multi-point vehicle inspection. Grimsrud Decl. Ex. 6 (fourth repair order) [Dkt. No. 38-7]. The cabin air filter was replaced in accordance with scheduled maintenance guidelines. *Id.*

During the fifth visit on April 11, 2015 at 30,766 miles, the car's alternator was replaced pursuant to a recall notice. Grimsrud Decl. Ex. 7 (fifth repair order) [Dkt. No. 38-8].

During the sixth visit on May 12, 2015 at 32,445 miles, the car underwent another lube, oil, and filter change, a tire rotation, and a multi-point vehicle inspection. Grimsrud Decl. Ex. 8 (sixth repair order) [Dkt. No. 38-9].

In June 2015, Atienza experienced problems with the car's transmission. Deposition of Jeffrey Atienza ("Atienza Depo.") [Dkt. No. 38-2] 22:2–3. He was driving uphill on the freeway at about 60 miles per hour when the check engine light came on and the car slowed to 45 miles per hour. *Id.* 21:7–11. Though he continued trying to accelerate, the car did not speed up. *Id.* 21:12–14. The check engine light was still on the next day when he drove the car. *Id.* 21:15–16. Though the car seemed fine when he first started to drive, the acceleration problem recurred when he went uphill. *Id.* 21:16–19.

During the seventh visit on June 24, 2015 at 34,003 miles, the car was scanned for fault codes, and the transmission was removed and replaced. Grimsrud Decl. Ex. 9 (seventh repair order) [Dkt. No. 38-10]; Atienza Depo. 21:19–20.

During the eighth visit on December 28, 2015 at 39,658 miles, the car's occupation restraint control was reprogrammed pursuant to a safety recall. Grimsrud Decl. Ex. 10 (eighth repair order) [Dkt. No. 38-11]. The car also underwent two software flashes, a lube, oil, and filter change, and a multi-point vehicle inspection. *Id.*

During the ninth visit on May 9, 2016 at 43,268 miles, the car underwent a software flash, a multi-point vehicle inspection, and repairs pursuant to another safety recall. Grimsrud Decl. Ex. 11 (ninth repair order) [Dkt. No. 38-12].

During the tenth visit on September 21, 2017 at 55,875 miles, the car underwent a lube, oil, and filter change, a tire rotation, and a multi-point vehicle inspection. Grimsrud Decl. Ex. 12 (tenth repair order) [Dkt. No. 38-13].

During the eleventh visit on April 5, 2018 at 61,291 miles, the car underwent a multi-point vehicle inspection and oil and filter change. The passenger airbag inflator was replaced pursuant to a safety recall. Grimsrud Decl. Ex. 13 (eleventh repair order) [Dkt. No. 38-14].

In May 2018, the check engine light came on again when Atienza was driving uphill on the interstate. *Id.* 22:10–14, 21–24. He took the car to Stewart Chrysler the following day, and by then the check engine light was off. *Id.* 22:25–23:1. He learned he would have to wait about two weeks for an appointment. *Id.* 23:1–3. Because the check engine light remained off, he did not return to Stewart Chrysler to check on the problem. *Id.* 23:3–5. Since then, he has not experienced other problems driving the vehicle, and he has not returned for repairs. *Id.* 24:4–15.

Atienza filed this case on September 26, 2016 in Sonoma County Superior Court alleging violations of the express and implied warranty provisions of California's Song–Beverly Consumer Warranty Act. *See* Complaint ("Compl.") [Dkt. No. 1-1]. FCA removed the case to this court on February 24, 2017 on the basis of diversity jurisdiction.[3] Notice of Removal [Dkt. No. 1]. FCA filed the motion for summary judgment now before me on October 26, 2018. Motion for Summary Judgment ("MSJ") [Dkt. No. 38].

---

[3] Atienza seeks damages of three times the vehicle's purchase price, or at least $80,275.95. Notice of Removal 4–5. FCA is incorporated in Delaware and has its principal place of business in Michigan. *Id.* 3.

3

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding the motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

FCA argues that Atienza's express and implied warranty claims fail as a matter of law. Atienza responds that summary judgment is not appropriate because there remain disputed material facts that require a jury determination.[4] Because there is evidence to support a jury verdict in Atienza's favor, I will deny FCA's motion for summary judgment.

---

[4] He also asserts that he lacks facts to oppose this motion because expert depositions and reports have yet to be taken and written up. He argues that I should deny FCA's motion under Federal Rule of Civil Procedure 56(d). *See* FED. R. CIV. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). Because there are other grounds on which to deny this motion, I need not address this argument (which received little attention in either party's briefing).

**I. EXPRESS WARRANTY**

The Song–Beverly Consumer Warranty Act obligates a manufacturer to replace nonconforming goods or reimburse a buyer for them if they have not been repaired within a reasonable number of attempts. CAL. CIV. CODE § 1793.2. The plaintiff has the burden to prove:

> (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element).

*Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001). "The Act is a remedial measure intended for the protection of consumers and should be given a construction consistent with that purpose." *Id.* at 1103. The Tanner Consumer Protection Act provides a presumption in favor of a reasonable number of attempts to repair if the same nonconformity is presented a specified number of times[5] or if "[t]he vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer."[6] CAL. CIV. CODE § 1793.22(b)(3).

FCA argues that Atienza has insufficient evidence to support the "presentation" and "failure to repair" elements of his claim. He never presented the same defect to an authorized repair facility more than once as required under the "attempts" language of the statute, and all issues that he did present were resolved. MSJ 11–13. FCA repaired the transmission once in 2015, and Atienza did not give them an opportunity to assess the vehicle in 2018 to determine whether the check engine light was related to the transmission. MSJ 11.

FCA cites *Silvio*, in which a California court of appeal concluded that the plaintiffs could not possibly have a claim under the Song–Beverly Act because they had only presented the vehicle for repair on one occasion. *Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1207

---

[5] The number of times depends on whether or not the nonconformity "is likely to cause death or serious bodily injury." CAL. CIV. CODE § 1793.22(b)(1).

[6] The Act provides that for the presumption to apply, these events must occur "within 18 months from delivery to buyer or 18,000 miles on the odometer of the vehicle, whichever occurs first." CAL. CIV. CODE § 1793.22.

5

(2003), *as modified* (June 19, 2003). The court concluded that because the word attempts in "reasonable number of attempts" is plural, the statute "does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle." *Id.* at 1208. The court declined to consider evidence of legislative intent because it found the statute unambiguous. *Id.*

Summary judgment is not appropriate because there are genuine disputes over whether FCA failed to repair the car after a reasonable number of attempts. First, contrary to FCA's arguments, two early visits dealt with a coolant leak. FCA provides no support for the idea that Atienza had to be aware of the problem for it to qualify as a defect under the Act. Second, even if Atienza's repair visits had all related to different defects, his claim would not be foreclosed. *See Oregel*, 90 Cal. App. 4th at 1103 ("[T]he only affirmative step the Act imposes on consumers is to permit the manufacturer a reasonable *opportunity* to repair the vehicle.") (internal quotation marks and citation omitted).

The language of the Tanner Consumer Protect Act presumption confirms my view. It creates a presumption based on distinct scenarios, namely whether there are multiple attempts to repair the *same defect* or whether the *vehicle as a whole* is out of service for repairs for a period of time. *See* CAL. CIV. CODE § 1793.22. Given both the language of the statutes and the legislative intent, it cannot be that a claim is foreclosed as a matter of law when a consumer makes multiple repair visits, each for a different defect. As Atienza points out in his opposition, FCA's reading would allow it to escape liability even if "every single component of the Charger broke once." Opposition ("Oppo.") [Dkt. No. 40] 10. FCA cannot convert a presumption in favor of plaintiffs into a bar that Atienza must meet in order to survive summary judgment.[7]

*Silvio* is not instructive for two reasons. First, I cannot agree with the court's statutory

---

[7] In another court of appeal case FCA cites, a defendant attempted to use the presumption in a similar manner. *See* MSJ 9; *Jiagbogu v. Mercedes-Benz USA*, 118 Cal. App. 4th 1235, 1245, 13 Cal. Rptr. 3d 679, 685 (2004). The defendant argued that the trial court erred in not giving a jury instruction regarding the presumption although the plaintiff had not relied on the presumption at trial. *Id.* The defendant sought to use the presumption as "an objective standard" of reasonableness and a show of its good faith. *Id.* The court concluded that the trial court was correct not to give the instruction and that it would have been "serious error" to do so for the purposes the defendant suggested. *Id.*

6

interpretation analysis. Given the structure of the phrase "a reasonable number *of X*," the object of the preposition "of" must necessarily be plural. One person might think one is a reasonable number of children, while another might find five a reasonable number. Children may be plural, but one is not. Second, as Atienza points out, the plaintiffs in *Silvio* brought in the entire vehicle for repair only once. *See* Oppo. 8. Accordingly, the court did not hold that a plaintiff must present the same defect more than once.

FCA has produced evidence that could lead a jury to conclude that it did not have a reasonable number of opportunities to cure the defects or that it successfully repaired all defects. It presents cases in which violations were found after multiple attempts to repair the same issue. *See Oregel*, 90 Cal. App. 4th at 1101 (six attempts for a single issue); *Schreidel v. Am. Honda Motor Co.*, 34 Cal. App. 4th 1242, 1246 (1995) (same); *Lukather v. Gen. Motors, LLC*, 181 Cal. App. 4th 1041, 1044 (2010) (more than four attempts for a single issue). But a reasonable jury could find that because of Atienza's multiple visits to Stewart Chrysler for various different issues (including safety recalls), FCA is liable under the Song–Beverly Act.

This question awaits jury determination. FCA's motion for summary judgment on the express warranty claim is DENIED.

**II. IMPLIED WARRANTY**

Under the Song–Beverly Act, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." CAL. CIV. CODE § 1792. The duration of the implied warranty of merchantability is no more than one year following the sale of the good. CAL. CIV. CODE § 1791.1(c). "There is nothing [in the text of the statute] that suggests a requirement that the purchaser discover and report to the seller a latent defect within that time period." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1310 (2009); *see Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015) (following the rule from *Mexia*).

FCA argues that Atienza's implied warranty claim fails because the problems he experienced during the first year of ownership, when the warranty was in effect, cannot constitute a breach. MSJ 13. During that time, his car had a coolant leak in the thermostat housing and a

7

second coolant leak that led to a replacement of the water pump. MSJ 14. Atienza's implied warranty claim is based on a defective engine and transmission, problems that did not present until after the implied warranty ended. MSJ 14–15; *see* Compl. ¶¶ 27–29.

The law does not support FCA's position. Defects that remain latent for the duration of the statutory window can nonetheless give rise to a breach of the warranty of merchantability. In addition, Atienza presents evidence of defects that in fact did present during the first year he owned the vehicle, including water pump failure, which he argues can lead to engine failure. A jury must determine whether or not the vehicle met the minimum standard of acceptable quality during the first year that Atienza owned it.

## CONCLUSION

For the foregoing reasons, FCA's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: December 10, 2018

William H. Orrick
United States District Judge